UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; | ) | |
| THE STATE OF UTAH; | ) | |
| THE STATE OF RHODE ISLAND; and | ) | |
| THE COMMONWEALTH OF | ) | |
| MASSACHUSETTS EXECUTIVE | ) | |
| OFFICE OF WORKFORCE | ) | |
| DEVELOPMENT, DEPARTMENT | ) | |
| OF LABOR STANDARDS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-05112-MHC |
| | ) | |
| HOME DEPOT U.S.A., Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................. 4

II.     SUBJECT OF THE CONSENT DECREE ................................................. 4

III.    APPLICABILITY ...................................................................................... 5

IV.     DEFINITIONS ........................................................................................... 6

V.      PENALTY ................................................................................................ 11

VI.     COMPLIANCE REQUIREMENTS ........................................................ 14

VII.    STIPULATED PENALTIES .................................................................... 32

VIII.   INTEREST ............................................................................................... 39

IX.     FORCE MAJEURE .................................................................................. 40

X.      DISPUTE RESOLUTION ....................................................................... 43

XI.     INFORMATION COLLECTION AND RETENTION ........................... 47

XII.    EFFECT OF SETTLEMENT ................................................................... 49

XIII.   COSTS ..................................................................................................... 52

XIV.    NOTICES ................................................................................................. 52

XV.     EFFECTIVE DATE ................................................................................. 56

XVI.    RETENTION OF JURISDICTION ......................................................... 56

XVII.   MODIFICATION ..................................................................................... 56

XVIII.  TERMINATION ....................................................................................... 57

XIX.    26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION .................................. 58

XX.     PUBLIC PARTICIPATION .................................................................... 58

XXI.    SIGNATORIES ........................................................................................ 59

XXII.   INTEGRATION ....................................................................................... 59

XXIII.  FINAL JUDGMENT ............................................................................... 60

XXIV.   APPENDICES .......................................................................................... 60

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"); Plaintiff State of Utah ("Utah"), on behalf of the Utah Department of Environmental Quality and the Utah Division of Air Quality; Plaintiff State of Rhode Island ("Rhode Island"), on behalf of the Rhode Island Department of Health Lead Poisoning Prevention Program; and Plaintiff Commonwealth of Massachusetts Executive Office of Labor and Workforce Development, Department of Labor Standards (collectively "Plaintiffs"), have filed a Complaint in this action concurrently with the lodging of this Consent Decree, which alleges, *inter alia*, that Home Depot U.S.A., Inc. ("Defendant") violated Sections 402(c), 406(b), and 407 of Title IV of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2682(c), 2686(b), & 2687, certain provisions of U.S. EPA's Lead Renovation, Repair and Painting Rule promulgated thereunder and codified at 40 C.F.R. Part 745, Subpart E, as well as the corresponding legal authorities, regulations, and requirements set forth by the various States, Indian Tribes, and other jurisdictions authorized by U.S. EPA under Section 404(a) of TSCA, 15 U.S.C. § 2684(a), to administer (in whole or in part) the requirements of TSCA and the Lead Renovation, Repair and Painting Rule (which EPA may independently enforce pursuant to 15 U.S.C. § 2864(b) ("Upon authorization of a State program under this section, it shall be unlawful for any person to violate or fail or refuse to comply with any requirement

of such program.")), including, by way of example, the Utah regulations promulgated under Section 19-2-104(1)(i) of the Utah Code contained in Utah Administrative Code Rules R307-840 through R307-842 ("Utah Lead-Based Paint Rules"); the Rhode Island Rules and Regulations for Lead Poisoning Prevention ("Rhode Island Lead Regulations") promulgated under R.I.G.L. § 23-24.6-1 *et seq*.; and the Massachusetts Deleading and Lead-Safe Renovation Regulations, 454 CMR 22.00 *et seq.* ("Massachusetts Lead Regulations") (for ease of reference U.S. EPA's Lead Renovation, Repair and Painting Rule and the corresponding rules and regulations in authorized States, Indian Tribes, and other jurisdictions are referred to collectively as the "RRP Rules"); and

WHEREAS, Defendant does not admit the allegations set forth in the Complaint; and

WHEREAS, the Plaintiffs allege they are entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with the RRP Rules under Section 17 of TSCA, 15 U.S.C. § 2616, the corresponding authorities in the authorized States, Indian Tribes, and other jurisdictions, including the Utah Lead-Based Paint Rules, the Rhode Island Lead Regulations, and the Massachusetts Lead Regulations, to ensure compliance through development and implementation of compliance procedures, and to ensure that any existing compliance procedures are continued; and

WHEREAS, Defendant, through this Consent Decree, is developing and will implement procedures to help ensure compliance with the RRP Rules, as set forth in Section VI (Compliance Requirements), including Exhibits A through F, of this Consent Decree; and

WHEREAS, Defendant, through this Consent Decree, is implementing projects to provide education and outreach to the community about the RRP Rules; and

WHEREAS, Defendant, through this Consent Decree, is implementing procedures for disciplining Installers that do not comply with the requirements of the RRP Rules when performing Renovations in Target Housing or Child-Occupied Facilities for Defendant; and

WHEREAS, the United States, Utah, Rhode Island, and Massachusetts allege that Defendant is subject to administrative penalties by U.S. EPA under Section 16 of TSCA, 15 U.S.C. § 2615, as well as civil penalties by Utah under Section 19-2-115(2)(a) of the Utah Code, Rhode Island under R.I.G.L. § 23-24.6-27(a), and Massachusetts under 454 CMR 29.04(2); and

WHEREAS, subject to the requirements in Section XX (Public Participation), below, Plaintiffs and Defendant consent to entry of this Consent Decree without trial of any issues; and

WHEREAS, the Parties recognize, and the Court by entering this Consent

Decree finds, that this Consent Decree has been negotiated by the Parties in good

faith and will avoid litigation between the Parties and that this Consent Decree is

fair, reasonable, and in the public interest.

NOW, THEREFORE, without any admission by Defendant of fact or law or

acknowledgement of any liability, and without any admission by Defendant of the

violations alleged in the Complaint, IT IS HEREBY ADJUDGED, ORDERED,

AND DECREED as follows:

## I. **JURISDICTION AND VENUE**

1.      Solely for the purposes of entry of this Consent Decree, or any action

to enforce this Decree, Defendant consents to the Court's jurisdiction over this

Decree and any such action, and to venue in this judicial district, except as

otherwise provided in this Decree.

2.      Solely for purposes of entry of this Consent Decree, Defendant agrees

that the Complaint states claims upon which relief may be granted pursuant to

Sections 15 U.S.C. § 2616, 28 U.S.C. § 1355, and the corresponding authorities in

authorized States, Indian Tribes, and other jurisdictions, including Utah Code § 19-

2-115(2)(a), R.I.G.L. § 23-24.6-27(a), and M.G.L. c. 149 § 6.

## II. **SUBJECT OF THE CONSENT DECREE**

3.      This Consent Decree concerns the RRP Rules, which require that

firms performing certain renovation, repair, and painting projects for

compensation, which disturb lead-based paint in homes and child-occupied facilities built before 1978, must be certified by U.S. EPA or a U.S. EPA-authorized State or Tribal program, and must use Certified Firms and Certified Renovators who must ensure disclosure of RRP-related information, develop and maintain required records, and follow specific work practices to prevent lead contamination.  This Consent Decree also concerns the corresponding requirements to the RRP Rules in authorized States, Indian Tribes, and other jurisdictions.  In particular, Utah, Rhode Island, and Massachusetts have similar provisions contained in Utah Lead-Based Paint Rules, the Rhode Island Lead Regulations, and the Massachusetts Lead Regulations, respectively.

### III.  **APPLICABILITY**

4.     The obligations of this Consent Decree apply to and are binding upon the Plaintiffs and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5.     No change in corporate status or ownership of Defendant shall affect Defendant's obligations under this Consent Decree.  At least thirty (30) Days prior to transferring ownership or operation of any part of the corporation of the Defendant, Defendant shall give notice of the terms of this Consent Decree to the prospective successor owner or operator of the corporation or portion thereof of the Defendant, and shall simultaneously verify to U.S. EPA in writing, in the manner

set forth in Section XIV (Notices), that such notice has been given.  No such sale or transfer shall relieve Defendant of any obligation set forth herein unless agreed to in writing by the United States and approved by the Court.

6.     Within sixty (60) Days after entry of this Consent Decree, Defendant shall provide a copy of this Consent Decree to the Senior RRP Compliance Manager, as herein defined, and provide a written summary of the requirements in Section VI (Compliance Requirements) of this Consent Decree to its regional and area field service installed sales employees whose duties reasonably include compliance with Section VI of this Consent Decree.

7.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors (including Firms and/or Renovators) to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  **DEFINITIONS**

8.     Unless otherwise expressly stated, the terms used in this Consent Decree that are defined in TSCA or 40 C.F.R. Part 745, Subpart E shall have the meanings set forth in such definitions.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Certified Firm" shall mean a Firm that has applied for and received a certification under the RRP Rules from U.S. EPA or from a State or Tribe authorized to administer the RRP Rules.

b.    "Certified Renovator" shall have the same meaning as certified renovator within the definition of "Renovator" at 40 C.F.R. § 745.83.

c.    "Common Areas" shall mean those portions of a property generally accessible to residents/users of Target Housing, and can exist on both the interior and exterior of the building, and include, but are not limited to, hallways, stairways, laundry and recreational rooms, playgrounds, community centers, garages, and boundary fences.

d.    "Consent Decree" or "Decree" shall mean this Consent Decree and Exhibits A through F hereto, and all modifications of this Consent Decree provided such modifications were made pursuant to Section XVII (Modification) of this Consent Decree.  The requirements of Exhibits A through F of this Consent Decree are incorporated herein by reference and made a directly enforceable part of this Consent Decree.

e.    "Customer" is a person that has a Customer Contract with Defendant.

f.    "Customer Contract" shall mean a written agreement between Defendant and a customer for any project that involves a Renovation.

g.    "Day" shall mean a calendar day unless expressly stated to be a

Business Day.  "Business Day" shall mean a day other than a Saturday, Sunday or federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period will run until the close of business of the next Business Day.

h.      "Defendant" shall mean Home Depot U.S.A., Inc.

i.      "Firm" shall mean a company, partnership, corporation, sole proprietorship, or individual doing business, association, or other business entity who either performs or directs workers who perform a Renovation.

j.      "Fiscal Quarter" shall mean the four quarters of the fiscal year of the Defendant, which begins on the first Monday of the first full week of February of a given year (e.g., February 1, 2021) and for the avoidance of doubt are as follows: Q1 February – April; Q2 May – July; Q3 August – October; Q4 November – January.

k.      "Government Agency" shall mean a Federal, State, Tribal/Territorial, or local agency with authority and interests pertinent to the purpose, function, and compliance with the RRP Rules.

l.      "Installer" shall mean a Person that contracts with Defendant to perform a Renovation, including but not limited to a Certified Firm and/or Certified Renovator that has so contracted with Defendant.

m.      "Interest" shall mean interest pursuant to 28 U.S.C. § 1961.

n.      A "Lead Project" shall mean a Renovation performed in Target Housing or a Child-Occupied Facility by an Installer pursuant to a Customer Contract.

o.      "Massachusetts" shall mean the Commonwealth of Massachusetts Executive Office of Labor and Workforce Development, Department of Labor Standards.

p.      Massachusetts Lead Regulations shall mean the Massachusetts' Deleading and Lead-Safe Renovation Regulations, 454 CMR 22.00 *et seq.*

q.      "Pamphlet" shall mean the U.S. EPA pamphlet titled "The Lead-Safe Certified Guide to Renovate Right," GPO Document #EPA-740-K-10-001, rev. 9/2011, and developed under Section 406(a) of TSCA for use under Section 406(b) of TSCA, or any State or Tribal pamphlet approved by U.S. EPA pursuant to 40 C.F.R. § 745.326 that is developed for the same purpose, as may be updated by U.S. EPA or the Defendant from time to time.  This includes reproductions of the pamphlet when copied in full and without revision or deletion of material from the pamphlet (except for the addition or revision of State or local sources of information or the addition of other information added by Defendant, such as a helpline or contact information).

r.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic number and/or lower case letter.

s.      "Parties" shall mean the United States of America, Utah, Rhode Island, Massachusetts, and Defendant.

t.      "Rhode Island" shall mean the State of Rhode Island acting on behalf of the Rhode Island Department of Health Lead Poisoning Prevention Program.

u.      "Rhode Island Lead Regulations" shall mean the State of Rhode Island's Rules and Regulations for Lead Poisoning Prevention.  216-RICR-50-15-3 *et seq*.

v.      "RRP Rules" shall mean U.S. EPA's Lead Renovation, Repair and Painting Rule set forth at 40 C.F.R. Part 745, Subpart E, and shall also include the corresponding rules and regulations in the authorized States, Indian Tribes, and other jurisdictions.

w.      "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

x.      "Subcontractor" shall mean a Person that is under contract with an Installer and is retained by the Installer.  A Person under contract with a Subcontractor as defined in the previous sentence shall also be a Subcontractor.

y.      "Target Housing" shall mean any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing) or any 0-bedroom dwelling, as defined in 40 C.F.R. § 745.103.

z.     "TSCA" means the Toxic Substances Control Act, 15 U.S.C. §§ 2601 to 2692.

aa.     "U.S. EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

bb.     "United States" shall mean the United States of America acting on behalf of the U.S. EPA.

cc.     "Utah" shall mean the State of Utah acting on behalf of the Utah Department of Environmental Quality and the Utah Division of Air Quality.

dd.     "Utah Lead-Based Paint Rules" shall mean the State of Utah's regulations contained in Utah Administrative Code Rules R307-840 through R307-842.

## V.  **PENALTY**

9.     Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay a total penalty of Twenty Million Seven Hundred and Fifty Thousand Dollars ($20,750,000.00), together with Interest accruing from the date on which the Consent Decree is lodged with the Court.

10.     Payment of the penalty set forth in Paragraph 9 shall be allocated as follows:

a.     Defendant shall pay Nineteen Million Two Hundred and Eighteen Thousand Dollars ($19,218,000.00), together with Interest, as an administrative

penalty by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office in the Northern District of Georgia.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the penalty owed pursuant to the Consent Decree in *United States of America v. Home Depot U.S.A., Inc.*, and shall reference the civil action number and DOJ case number 90-5-1-1-11854, to the United States in accordance with Section XIV (Notices) of this Consent Decree; by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

b.      Defendant shall pay a civil penalty of Seven Hundred Fifty Thousand Dollars ($750,000.00), together with Interest, by wire transfer to the Utah Department of Environmental Quality, Utah Division of Air Quality, in accordance with instructions that will be provided to the Defendant following the entry of this Consent Decree.  Utah and the Defendant agree that eighty percent (80%) of the total penalty amount due to Utah ($600,000.00, together with Interest) shall be deposited into the Environmental Mitigation and Response Fund ("the Fund") as

authorized by Section 19-1-603(3) of the Utah Code.  The funds deposited by the Defendant to the Fund shall be earmarked for asbestos and lead-based paint abatement projects per Sections 19-1-603(4) and 19-1-604(2) of the Utah Code. The funds will remain in the Fund until depleted for use on the asbestos and lead-based paint abatement projects and will not revert or be paid back to the Defendant.  The remainder of the Utah penalty required under this subparagraph ($150,000.00, together with Interest) shall be deposited into the General Fund under Section 19-2-115(9)(a) of the Utah Code.

c.      Defendant shall pay a civil penalty of Fifty Thousand Dollars ($50,000.00), together with Interest, by check to the Rhode Island Treasurer – Lead Screening Restricted Receipt Account, in accordance with instructions that will be provided to the Defendant following the entry of this Consent Decree.  In accordance with R.I.G.L. § 23-24.6-10, the funds shall be used for lead-based paint abatement projects and shall remain in the Lead Screening Restricted Account until depleted.

d.      Defendant shall pay a civil penalty of Seven Hundred Thirty Two Thousand Dollars ($732,000.00), together with Interest, by check to the Massachusetts Department of Labor Standards, in accordance with instructions that will be provided to the Defendant following the entry of this Consent Decree.

11.     Defendant shall not deduct the penalty, or any Interest or stipulated penalties, paid to the Plaintiffs under this Consent Decree from its federal income taxes, and this Consent Decree does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VI.  COMPLIANCE REQUIREMENTS

12.     Defendant shall comply with all applicable requirements of Sections 402(c) and 406(b) of TSCA and their implementing regulations.

13.     RRP Firm Certification.  Defendant shall retain and timely renew its RRP Firm Certification as set forth in 40 C.F.R. § 745.89.

14.     Senior RRP Compliance Manager.  Within thirty (30) Days of the Effective Date of the Consent Decree, Defendant shall designate an individual employed by Defendant, at least at the level of a Vice President, to serve as the Defendant's "Senior RRP Compliance Manager."  The identity of the Senior RRP Compliance Manager is subject to change without the approval of U.S. EPA or the Court by providing notice in the next semi-annual report as provided for in Paragraph 21 below.

15.     Age of Property.  Upon the Effective Date of the Consent Decree, the Defendant will certify that it uses third-party software to query public records and other information regarding the year built date of the property to automatically determine and upload the year of construction for each property where Defendant

has entered into a contract to conduct a Renovation.  If the year built date of the property cannot be ascertained by the third-party software, the Defendant will:

      a.    Use property or other public records (e.g., tax assessor) to determine the year built of the property; or

      b.    Defendant may use information from the owner of the property involved in the Renovation as documented on an HS-118 Form (see Exhibit F); or

      c.    If Defendant cannot establish the year built date of the property based on Paragraph 15.a or Paragraph 15.b, the Installer or Subcontractor conducting the Renovation shall assume that the property involved in the Renovation was built before 1978.

      16.    <u>Customer Notification Requirements</u>.

      a.    <u>Website Posting</u>.  Within thirty (30) Days of the Effective Date of the Consent Decree, Defendant shall submit to U.S. EPA a certification, in the manner set forth in Section XIV (Notices) of the Consent Decree, and signed by the Senior RRP Compliance Manager, that Defendant has included a link to the page on U.S. EPA's website that provides information on lead-safe work practices (currently at http://www.epa.gov/lead/renovation-repair-and-painting-program) at an appropriate location in the "Home Services" section of its public internet website, or such other location on Defendant's website as may be agreed to in writing by the Parties.

b.     Delivery of Pamphlet.  Upon the Effective Date of the Consent

Decree, the Defendant shall:

i.     Delivery of Pamphlet to Customer.  Obtain and retain, before

the commencement of a Lead Project (but no more than sixty (60) Days

before), a signed and dated receipt from the Customer denoting delivery of

the Pamphlet to the Customer or documentation reflecting the attempted

delivery of the Pamphlet (such as a certificate of mailing).  Defendant may

comply with this provision by obtaining and retaining a document denoting

timely delivery or attempted delivery of the Pamphlet from the Installer or

Subcontractor performing the Lead Project.

ii.     Delivery of Pamphlet to Occupant Other than Customer.  If the

Lead Project is in a dwelling unit of Target Housing or in a Child-Occupied

Facility that is not occupied by the Customer, Defendant shall obtain and

retain information, consistent with the requirements in 40 C.F.R. § 745.84,

denoting delivery or attempted delivery of the Pamphlet to an adult occupant

of such Target Housing unit, or an adult representative of such Child-

Occupied Facility, prior to commencing any Lead Project (but no more than

sixty (60) Days before the commencement of the Lead Project).  Defendant

may comply with this provision by obtaining and retaining a document

denoting timely delivery or attempted delivery of the Pamphlet from the

Installer or Subcontractor performing the Lead Project.

iii.        Delivery of Pamphlet for Lead Projects in Common Areas.  For

Lead Projects in Common Areas, Defendant shall obtain and retain

information, consistent with the requirements in 40 C.F.R. § 745.84(b),

denoting that an Installer or Subcontractor performing the Lead Project:

provided the Pamphlet to the owner of the multi-unit Target Housing;

notified in writing each affected unit of the Lead Project and changes to the

Lead Project, or posted informational signs while the Lead Project is

ongoing; and made the Pamphlet available.

iv.        Institute procedures that require an Installer or Subcontractor

performing a Lead Project to document the acknowledgment of receipt or

attempted delivery of the Pamphlet as required by Paragraph 16.b.i to iii,

and provide such documentation to Defendant within thirty (30) Days after

an Installer notifies Defendant that the Installer or Subcontractor has

completed a Lead Project.

c.      Checklist.  Upon the Effective Date of the Consent Decree:

i.        Defendant shall, upon completion of a Lead Project, require the

Installer or Subcontractor to complete the Installer Checklist that is attached

to this Consent Decree in Exhibit A ("Checklist") and provide it to the

owner and, if different, an adult occupant within thirty (30) Days of completion of a Lead Project. If the Installer or Subcontractor fails to provide a completed Checklist to the owner and, if different, an adult occupant, Defendant shall provide it at the owner or occupant's request if Defendant has the Checklist from the Installer.

ii.     Defendant shall use the Checklist in the form set forth in Exhibit A, which Defendant may revise from time to time with the prior written approval of U.S. EPA.  Defendant shall provide such updated Checklist to its Installers within thirty (30) Days of U.S. EPA's approval.

iii.     Not later than ninety (90) Days after the Effective Date, Defendant shall include a prompt in any computerized selling tools that instructs Defendant's sales associates in the process of selling a Lead Project to inform Defendant's customers of the following: (1) upon completion of the Renovation, the Installer or Subcontractor will complete a copy of the Installer Checklist for Renovations ("Checklist"); (2) the Installer or Subcontractor shall provide a copy of the completed Checklist to the owner and, if different, an adult occupant, as required by the RRP Rules; and (3) if the Installer or Subcontractor fails to provide a copy of the completed Checklist to the owner or occupant as required, then the owner or occupant may contact Defendant and Defendant shall provide a copy of the Checklist

to the owner or occupant as completed by the Installer or Subcontractor,
provided that the Installer or Subcontractor has submitted the completed
Checklist to Defendant.

      iv.      Not later than ninety (90) Days after the Effective Date, for
Lead Projects sold by a third-party on Defendant's behalf, Defendant will
require that the third-party provide the same disclosure as set forth in
Paragraph 16.c.iii.

17.    <u>Lead Testing</u>.  Upon the Effective Date of the Consent Decree, for all
Lead Projects where an Installer or Subcontractor conducts lead testing, Defendant
shall require the Installer or Subcontractor to conduct lead testing properly, as set
forth in the RRP Rules, and provide the Defendant with a copy of the completed
lead testing form found in Exhibit B, which form may be modified from time to
time with the prior written approval of U.S. EPA; provided, however, that lead
testing and the lead testing form are not required for those Lead Projects where the
presence of lead is assumed.  The phrase "where the presence of lead is assumed"
shall mean for the purposes of this Consent Decree, situations where Defendant or
its Installers and Subcontractors assume the presence of lead paint and comply
with all of the RRP Rules as if there had been a positive lead test.

18.   <u>Use of Certified Firms and Certified Renovators</u>.

a.     Upon the Effective Date of the Consent Decree, Defendant shall use Certified Firms and Certified Renovators for Lead Projects (except for portions of Lead Projects that are not subject to the requirements of the RRP Rules) as required by <u>40 C.F.R. § 745.85(a)</u> and <u>40 C.F.R. § 745.89(d)</u>.  Defendant shall require that Installers that subcontract all or a portion of the Lead Project to a Subcontractor use only Certified Firms to perform any portion of Lead Projects (except for portions of Lead Projects that are not subject to the requirements of the RRP Rules), and assign at least one Certified Renovator to each Lead Project.  For those instances in which Defendant does not select the Installer (e.g., jobs that are sold and installed by a third party on Defendant's behalf), Defendant shall require that those third parties utilize RRP Certified Firms and Certified Renovators for portions of Lead Projects subject to the requirements of the RRP Rules.

b.     Within one hundred and twenty (120) Days of the Effective Date of the Consent Decree, Defendant shall submit to U.S. EPA a certification, in the manner set forth in Section XIV (Notices) of the Consent Decree, and signed by the Senior RRP Compliance Manager, that Defendant has developed and implemented procedures to:

i.       Track its Installers' Firm certification expiration dates and issue a notice to its Installers ninety (90) Days prior to the expiration date of the Installers' Firm certification.

ii.      Suspend or terminate any Firms from performing Lead Projects whose Firm certifications have expired or who are otherwise uncertified until such time that the Installer provides Defendant with evidence that their Firm certification was renewed or obtained.

iii.     Take disciplinary action, which may include suspension, termination, or fines, against any Installer that has contracted a Lead Project, or any portion thereof (except for portions of Lead Projects that are not subject to the requirements of the RRP Rules), to a Subcontractor that is not a Certified Firm or that does not have a Certified Renovator assigned to the Lead Project, and report such disciplinary action in the next Periodic Report required by Paragraph 21, below.

c.       Following the submittal of the certification pursuant to Paragraph 18.b, Defendant shall comply with the procedures set forth therein.

19.      Compliance Investigation and Response Process.

a.       Renovation Complaint Process.  Within thirty (30) Days of the Effective Date of the Consent Decree, the Senior RRP Compliance Manager shall establish and implement a process to enable anyone (e.g., public, Customer, or

Government Agency) to contact Defendant with information concerning Defendant's Renovations.  Defendant will develop a dedicated e-mail address for RRP Complaints and publish that e-mail address in the Pamphlet and Checklist.

        b.      <u>Establishment of Installer and Subcontractor Compliance Procedures</u>. Within twelve (12) months of the Effective Date of the Consent Decree, Defendant shall submit to U.S. EPA a certification, in the manner set forth in Section XIV (Notices) of the Consent Decree, and signed by the Senior RRP Compliance Manager, that Defendant has developed and implemented procedures to investigate and respond to potential Installer or Subcontractor RRP compliance issues, including:  (1) failure by an Installer or Subcontractor to provide the Pamphlet as required by Paragraph 16.b; (2) failure by an Installer or Subcontractor to provide the Checklist as required by Paragraph 16.c; (3) failure by an Installer or Subcontractor to meet the lead testing requirements of Paragraph 17; and (4) complaints received from third parties (e.g., the public, customers, or Government Agencies) pursuant to Paragraph 19.a, or identified by Defendant pursuant to Paragraph 19.d regarding the failure of the Defendant or of any of its Installers or Subcontractors to comply with the RRP Rules, including the failure to comply with lead-safe work practices for Lead Projects.

        c.      <u>Corrective Measures for Potential Installer or Subcontractor Noncompliance.</u> Once the Defendant submits the certification set forth in

Paragraph 18.b, Defendant shall undertake the following corrective measures for potential Installer or Subcontractor Noncompliance with RRP Rules or compliance procedures required by this Consent Decree:

      i.      In instances where the Installer or Subcontractor failed to provide the Pamphlet for a Lead Project as required by Paragraph 16.b, Defendant shall follow the procedures set forth in Exhibit C to this Consent Decree.

      ii.      In instances where the Installer or Subcontractor failed to provide the Checklist to Defendant as required by Paragraph 16.c, Defendant will follow the procedures set forth in Exhibit D to this Consent Decree.

      iii.      In instances where the Installer or Subcontractor failed to meet the lead testing requirements of Paragraph 17, Defendant will follow the procedures set forth in Exhibit E to this Consent Decree.

      iv.      In instances where the Installer or Subcontractor conducting a Lead Project (except for portions of Lead Projects that are not subject to the requirements of the RRP Rules) was not a Certified Firm or did not use a Certified Renovator as required by Paragraph 18.a, Defendant will follow the procedures set forth in Exhibit E to this Consent Decree.

v.       In all other instances of reported or suspected non-compliance with requirements of the RRP Rules such as a Customer complaint to the Defendant's dedicated e-mail, allegation of a potential noncompliance from a Government Agency, or identification of a failure to follow RRP Rules or this Consent Decree during a jobsite inspection Defendant performs pursuant to Paragraph 19.d, Defendant will follow the procedures set forth in Exhibit E to this Consent Decree.

d.       <u>Jobsite Inspections</u>.  Starting in the Defendant's first full Fiscal Quarter after the Effective Date of the Consent Decree, Defendant shall conduct jobsite inspections ("JSIs") as follows:

i.       Defendant shall conduct at least 6,000 JSIs per year (in a 12-month period) of projects involving pre-1978 housing (for a total of at least 18,000 JSIs over the duration of this Consent Decree).

ii.      As part of the JSIs, Defendant shall review the projects for RRP compliance, including, as applicable:

1.       Verifying there is at least one Certified Renovator on-site or available who has provided required on-the job training;

2.       Verifying Firm Certification;

-24-

3.      Accurately completing records for Pamphlet distribution as described in Paragraph 16.b, the Checklist as described in Paragraph 16.c, and lead testing as described in Paragraph 17;

4.      Observing Installers' (and their Subcontractors' if applicable) compliance with lead-safe work practices; and

5.      Properly documenting any exception to the RRP Rules, such as the Minor Repair and Maintenance Activities Exception, for projects that do not meet the definition of a Renovation.

iii.      JSIs will be conducted by individuals who are RRP certified and knowledgeable of the provisions set forth in this Consent Decree.

20.   <u>RRP Educational Program</u>.

a.    Within twelve (12) months of the Effective Date of the Consent Decree, Defendant shall implement an RRP educational program that provides information that is consistent with the requirements of the RRP Rules and includes the following:

i.      <u>Do-It-Yourself Customers</u>.  The Defendant will develop written and videographic educational materials dedicated to Defendant's do-it-yourself customers.  The materials will include information that describes U.S. EPA's RRP requirements as well as a video regarding Lead Safe Work Practices.  For a period of not less than twelve (12) months Defendant will:

1.    <u>Promote Educational Materials In-Store</u>.  Make written educational materials available through a display that contains a Quick Response code, otherwise known as a "QR Code," in the paint section of its retail stores. In state or local jurisdictions where specific information pertaining to Lead Safe Work Practices is required to be posted in-store, satisfaction of that state or local requirement shall be deemed to satisfy the obligations of this Paragraph (Paragraph 20.a.i.1).

2.    <u>On-line Education</u>.  Defendant will make educational materials available through a link (and, in particular, the posting of the video) on The Home Depot Website as well as social media platforms where the Defendant maintains a presence for outreach to general audiences (e.g., YouTube), and will allow this video to be available as a public domain video.

3.    <u>Workshops</u>.  Make educational materials available through a display that contains a QR Code at its Do-it-Yourself Workshops and Kids Workshops.

ii.    <u>Professional and Contractor Customers</u>.  The Defendant will develop written and videographic educational materials dedicated to

Defendant's professional and contractor customers that describe the U.S.

EPA's RRP requirements and will do the following:

      1.     <u>Promote Educational Materials on the Internet</u>.  Include a

reference to U.S. EPA's training and certification website at

https://www.epa.gov/lead/renovation-repair-and-painting-program-

contractors.  Defendant will also provide a link to the educational

information and videos on the professional section of Defendant's

website as well as social media platforms where the Defendant

maintains a presence for outreach to professional audiences (e.g.,

https://www.homedepot.com/c/professional_contractor and the Home

Depot Pro Channel on YouTube) for a period of not less than twelve

(12) months.

      2.     <u>Direct Mail</u>.  Complete an electronic mailing of the

educational materials to its list of professional and contractor

customers.

      3.     <u>Promote Educational Materials In-Store</u>.  Make the

educational information available through a display that contains a

QR Code at its dedicated professional counters in retail stores for a

period of not less than twelve (12) months.  In state or local

jurisdictions where specific information pertaining to Lead Safe Work

Practices is required to be posted in-store, satisfaction of that state or local requirement shall be deemed to satisfy the obligations of this Paragraph (Paragraph 20.a.ii.3).

21.    <u>Monitoring and Reporting/Periodic Reports</u>.

a.    Defendant shall submit to U.S. EPA three (3) years of semi-annual Periodic Reports, thus spanning six (6) "Reporting Periods," or until this Consent Decree terminates in accordance with Section XVIII (Termination).  The first Reporting Period shall begin on the Effective Date of the Consent Decree and conclude six (6) months thereafter.  The five (or more) subsequent Reporting Periods shall likewise extend for a period of six (6) months each.  Within forty-five (45) Days after the conclusion of each Reporting Period, Defendant shall submit to U.S. EPA, in the manner set forth in Section XIV (Notices) of the Consent Decree, a Periodic Report, signed by the Senior RRP Compliance Manager.

b.    Defendant shall submit an initial Periodic Report to the U.S. EPA that states or documents that: (1) its RRP Firm Certification remains current as required in Paragraph 13; (2) the Senior RRP Compliance Manager selected, and the date they were designated, as provided in Paragraph 14; (3) Defendant is utilizing third-party software to determine the year built of property involved in a Renovation; (4) Defendant is providing the Pamphlet and is retaining records as required by Paragraph 16.b; (5) Defendant is requiring the use of the Checklist by Installers or

Subcontractors as required by Paragraph 16.c and identifies the date that it

distributed and instructed its Installers and Subcontractors to use the Checklist; and

(6) Defendant is requiring its Installers or Subcontractors to perform lead testing

(or assuming the presence of lead) as required by Paragraph 17.

    c.      Each Periodic Report shall include the following:

        i.      Confirmation that the Defendant has included a link on its

website to the page on U.S. EPA's website that provides information on

lead-safe work practices (currently at http://www.epa.gov/lead/renovation-

repair-and-painting-program);

        ii.      Instances in the Reporting Period where Defendant did not

receive a signed Pamphlet receipt from an Installer for a Lead Project

pursuant to Paragraph 16.b and actions that Defendant took in response

(including any fines imposed on the Installer or Subcontractor pursuant to

Defendant's discipline policy, where applicable);

        iii.      Instances in the Reporting Period where a Lead Project

involved Common Areas and Installers or Subcontractors failed to notify in

writing each affected unit and make the Pamphlet available, or failed to post

informational signs while the Lead Project was ongoing and actions that

Defendant took in response (including any fines imposed on the Installer or

Subcontractor pursuant to Defendant's discipline policy, where applicable);

-29-

iv.      Instances in the Reporting Period where an Installer or Subcontractor did not provide a Customer with a Checklist for a Lead Project pursuant to Paragraph 16.c and actions that Defendant took in response (including any fines imposed on the Installer or Subcontractor pursuant to Defendant's discipline policy, where applicable);

v.      Instances in the Reporting Period where an Installer or Subcontractor failed to meet the lead testing requirements of Paragraph 17 for a Lead Project and actions that Defendant took in response (including any fines imposed on the Installer or Subcontractor pursuant to Defendant's discipline policy, where applicable);

vi.      Instances in the Reporting Period where a Lead Project was performed by a person or entity that did not qualify as a Certified Firm or Renovator as required under Paragraph 18.a and actions that Defendant took in response (including any fines imposed on the Installer or Subcontractor pursuant to Defendant's discipline policy, where applicable);

vii.      Information regarding third-party complaints received and investigated by Defendant in the applicable Reporting Period and actions that Defendant took in response (including any fines imposed on the Installer or Subcontractor pursuant to Defendant's discipline policy, where applicable).  Specifically,

1.      Defendant shall include a summary of the results of its completed inquiries into each Complaint received since the previous Periodic Report was submitted, or, if its inquiry is ongoing, a statement identifying when the inquiry began and that the inquiry is ongoing.  If the inquiry is ongoing, Defendant shall provide a summary of the status of the inquiry in subsequent Periodic Reports until such inquiry is completed;

2.      In any Lead Project where Defendant's inquiry of a Complaint confirms, in Defendant's opinion, a deviation from lead safe work practices by an Installer or Subcontractor, Defendant shall include information regarding that Certified Firm and/or Certified Renovator (e.g., name, address, certification number); and

3.      U.S. EPA may request more information about specific Certified Firms and/or Renovators whose actions or inactions lead to a disclosure in a periodic report and the actions or inactions that led to the disclosure, including but not limited to specific suspensions or terminations referenced in Paragraph 18.b.ii and/or more information about Complaint inquiries referenced in Paragraph 19.c.iv.

viii.      Defendant shall identify the number of JSIs conducted in the reporting period as required by Paragraph 19.d, and for any JSI that

identifies a noncompliance with the RRP Rules, provide the following information: city and state of job, type of job, the noncompliance, steps to correct the noncompliance, if any, and any further actions taken by Defendant in response;

      ix.      Defendant shall provide an Excel spreadsheet identifying Installers used by Defendant in the Reporting Period for performing Lead Projects, along with Firm certification numbers for those Installers; and

      x.      Defendant shall provide a summary identifying actions undertaken (e.g., information distributed through a QR code, video posted, workshop performed, etc.), audience type (general or professional), and an estimate of the numerical size of audience reached (if possible), in response to the RRP educational programs required by Paragraph 20.

      xi.      Defendant shall provide a sample or link to the RRP educational program material made publicly available during the Reporting Period.

## VII.  STIPULATED PENALTIES

22.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under this Section or Section IX (Force Majeure) and subject to the dispute resolution provisions of Section X (Dispute Resolution).  Defendant shall be liable to Utah

for failure to pay the Utah civil penalty specified in Paragraph 10.b within thirty

(30) Days of entry of Consent Decree at $5,000 per Day, unless excused under this

Section or Section IX (Force Majeure) and subject to the dispute resolution

provisions of Section X (Dispute Resolution). Defendant shall be liable to Rhode

Island for failure to pay the Rhode Island civil penalty specified in Paragraph 10.c

within thirty (30) Days of entry of Consent Decree at $5,000 per Day, unless

excused under this Section or Section IX (Force Majeure) and subject to the

dispute resolution provisions of Section X (Dispute Resolution).  Defendant shall

be liable to Massachusetts for failure to pay the Massachusetts civil penalty

specified in Paragraph 10.d within thirty (30) Days of entry of Consent Decree at

$5,000 per Day, unless excused under this Section or Section IX (Force Majeure)

and subject to the dispute resolution provisions of Section X (Dispute Resolution).

23.    A violation subject to stipulated penalties to the United States includes

failing to perform any obligation required by the terms of this Consent Decree

according to all applicable requirements of this Consent Decree and within the

specified time schedules established by or approved under this Consent Decree as

follows:

| | |
|---|---|
| Violation of Paragraph 10.a. Failure to pay penalty within thirty (30) Days of entry of Consent Decree. | $5,000 per Day |

| | |
|---|---|
| Violation of Paragraph 13. Failure to retain and timely renew RRP Firm Certification. | $5,000 per Day |
| Violation of Paragraph 14. Failure to designate a Senior RRP Compliance Manager within thirty (30) Days of entry of Consent Decree. | $500 per Day for up to 30 Days<br>$1,000 per Day for 31-60 Days<br>$2,000 per Day after 60 Days |
| Violation of Paragraph 16.a. Failure to submit certification of website posting within thirty (30) Days of entry of Consent Decree. | $500 per Day for up to 30 Days<br>$1,000 per Day for 31-60 Days<br>$2,000 per Day after 60 Days |
| Violation of Paragraph 16.b.i. Failure to document timely delivery of Pamphlet to Customer before the commencement of a Lead Project. | $2,500 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification, the stipulated penalty shall be $500 per Lead Project |
| Violation of Paragraph 16.b.ii. Failure to document timely delivery of Pamphlet to occupant other than Customer and obtain and retain signed receipt of delivery before the commencement of a Lead Project. | $2,500 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification, the stipulated penalty shall be $500 per Lead Project |
| Violation of Paragraph 16.b.iii. Failure to document timely delivery of Pamphlet and other required information for Lead Projects in Common Areas of multi-unit Target Housing. | $2,000 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification, the stipulated penalty shall be $500 per Lead Project |

| | |
|---|---|
| Violation of Paragraph 16.c.i. Failure to provide the Checklist to an owner or occupant within thirty (30) Days of completion of a Lead Project. | $2,500 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification, the stipulated penalty shall be $1000 per Lead Project |
| Violation of Paragraph 16.c.iii. Failure to include required prompt in computerized selling tool within ninety (90) Days after Effective Date. | $500 per Day for up to 30 Days<br>$1,000 per Day for 31-60 Days<br>$2,000 per Day after 60 Days |
| Violation of Paragraph 17. Failure to properly conduct lead testing (or assume lead) for all Lead Projects. | $5,000 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification, the stipulated penalty shall be $1,500 per Lead Project |
| Violation of Paragraph 18.a. Failure to use Certified Firms and Certified Renovators for Lead Projects. | $7,500 per Lead Project; provided, however, that for Lead Projects sold to Customers after the Paragraph 18.b certification and an uncertified Subcontractor performs the Lead Project, the stipulated penalty shall be $2,500 per Lead Project |
| Violation of Paragraph 18.b. Failure to submit certification, within one hundred and twenty (120) Days of Effective Date, that Defendant has developed and implemented required procedures concerning Installers use of certified renovators. | $500 per Day for up to 30 Days<br>$1,000 per Day for 31-60 Days<br>$2,000 per Day after 60 Days |

| | |
|---|---|
| Violation of Paragraph 18.c. Failure to comply with the disciplinary procedures (set forth in Paragraph 18.b). | $2,500 per Lead Project for failure to comply with the disciplinary procedures set forth in Paragraph 18.b |
| Violation of Paragraph 19.a. Failure to establish and implement process for contacting Defendant concerning RRP Rules compliance within thirty (30) Days of Effective Date. | $500 per Day for up to 30 Days<br><br>$1,000 per Day for 31-60 Days<br><br>$2,000 per Day after 60 Days |
| Violation of Paragraph 19.b. Failure to submit certification, within twelve (12) months of the Effective Date, that Defendant has implemented Installer and Subcontractor RRP Compliance Procedures. | $750 per Day for up to 30 Days<br><br>$1,500 per Day for 31-60 Days<br><br>$3,000 per Day after 60 Days |
| Violation of Paragraph 19.c.i to iv. Failure to follow the procedures set forth in Exhibit C (Procedures for Missing Pamphlet Receipt), Exhibit D (Procedures for Missing Checklist), or Exhibit E (Procedures for Addressing Complaints and other Non-Compliance) following an instance of reported or suspected non-compliance with RRP Rules or Consent Decree requirements. | $2,000 per Lead Project for failure to follow Exhibit C<br><br>$7,500 per Lead Project for Failure to Follow Exhibit D<br><br>$10,000 per Lead Project for Failure to Follow Exhibit E |
| Violation of Paragraph 19.d.i. Failure to conduct at least 6,000 JSIs per year at projects involving pre-1978 housing (for a total of at least 18,000 JSIs over the duration of this Consent Decree). | $500 for each JSI below the annual minimum of 6,000 JSIs |
| Violation of Paragraph 20.a. Failure to implement an RRP educational program consistent with the requirements in Paragraph 19 within twelve (12) months of Effective Date. | $500 per Day for up to 30 Days<br><br>$1,000 per Day for 31-60 Days<br><br>$2,000 per Day after 60 Days |

| Violation of Paragraph 21.a. Failure to timely submit semi-annual Periodic Report that complies with the requirements of Paragraph 21.a to c. | $500 per Day for up to 30 Days<br>$1,000 per Day for 31-60 Days<br>$2,000 per Day after 60 Days |
|---|---|

24.     Defendant shall pay stipulated penalties within thirty (30) Days of receiving the United States', Utah's, Rhode Island's, or Massachusetts' written demand (for the portion of the civil penalty due to Utah in Paragraph 10.b, to Rhode Island in Paragraph 10.c, or to Massachusetts in Paragraph 10.d) unless Defendant initiates dispute resolution in accordance with Section X (Dispute Resolution).  Interest and late charges shall be paid as stated in Section VIII (Interest).

25.     Penalties under Paragraph 23 shall begin to accrue on the Day after the complete performance is due or the Day a violation occurs, and shall continue to accrue through the final Day of correction of the violation or completion of the activity.  Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties for separate violations of this Consent Decree, even where those violations concern the same event.

26.     Stipulated penalties shall continue to accrue as provided in Paragraph 23, during any dispute resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of U.S. EPA, Utah, Rhode Island, or Massachusetts that is not appealed to the

Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, as may be determined by such agreement of the Parties or decision of U.S. EPA, Utah, Rhode Island, or Massachusetts, to the United States, Utah, Rhode Island, or Massachusetts within thirty (30) Days of the date of the agreement or the receipt of U.S. EPA's, Utah's, Rhode Island's, or Massachusetts' decision or order.

b.      If the dispute is appealed to the Court and the United States, Utah, Rhode Island, or Massachusetts prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within fifteen (15) Days of receiving the final Appellate Court decision.

27.      Defendant shall pay stipulated penalties owing to the United States, Utah, Rhode Island, or Massachusetts in the manner set forth and with the confirmation notices required by Section XIV (Notices), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

28.     Nothing in this Paragraph shall be construed to prevent the United States, Utah, Rhode Island, or Massachusetts from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.  Defendant reserves any defenses to any remedy the United States, Utah, Rhode Island, or Massachusetts may seek pursuant to this Paragraph.

29.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States, Utah, Rhode Island, or Massachusetts for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of Title IV of TSCA, 15 U.S.C. §§ 2681-2692, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.  Defendant reserves any defenses to any actions the United States, Utah, Rhode Island, or Massachusetts may bring pursuant to this Paragraph.

30.     Notwithstanding any other provision of this Section, U.S. EPA, Utah, Rhode Island, or Massachusetts may, in their unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## VIII.  INTEREST

31.     If Defendant fails to make timely payment of the penalty or stipulated penalties due under this Consent Decree, Defendant shall be liable for Interest, as

defined in Section IV (Definitions), and Stipulated Penalties, as defined in Section

VII (Stipulated Penalties).  Such late penalty payment(s) shall include the

following:

     a.     Interest for any period after the due date; and

     b.     A six percent per-annum penalty charge if the penalty or any

stipulated penalty is not paid within ninety (90) Days after the due date.

## IX.  FORCE MAJEURE

32.     "Force majeure," for purposes of this Consent Decree, means any

event arising from causes beyond the control of Defendant, of any entity controlled

by Defendant, or of Defendant's contractors, that delays or prevents the

performance of any obligation under this Consent Decree despite Defendant's best

efforts to fulfill the obligation.  The requirement that Defendant exercise "best

efforts to fulfill the obligation" includes using best efforts to anticipate any

potential force majeure event and best efforts to address the effects of any such

event (a) as it is occurring and (b) after it has occurred to prevent or minimize any

resulting delay or harm that may result from such delay to the greatest extent

possible.  Force majeure does not include Defendant's financial inability to

perform any obligation under this Consent Decree.

33.     If any event occurs or has occurred that will delay the performance of

any obligation under this Consent Decree, for which Defendant intends or may

intend to assert a claim of force majeure, Defendant shall provide written notice to the U.S. EPA, Utah (for the portion of the penalty due to Utah), Rhode Island (for the portion of the penalty due to Rhode Island), or Massachusetts (for the portion of the penalty due to Massachusetts) as provided for in Section XIV (Notices) within fourteen (14) Days of when Defendant first knew that the event might cause a delay.  Defendant shall provide in the notice an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstances of which Defendant knew or should have known.

34.     If U.S. EPA, Utah (for the portion of the penalty due to Utah), Rhode Island (for the portion of the penalty due to Rhode Island), or Massachusetts (for the portion of the penalty due to Massachusetts) agree that the delay or anticipated

delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by U.S. EPA, Utah, Rhode Island, or Massachusetts for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  U.S. EPA, Utah, Rhode Island, or Massachusetts will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

35.     If U.S. EPA, Utah, Rhode Island, or Massachusetts do not agree that the delay or anticipated delay has been or will be caused by a force majeure event, U.S. EPA, Utah, Rhode Island, or Massachusetts will notify Defendant in writing of the decision.

36.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than thirty (30) Days after receipt of U.S. EPA's, Utah's, Rhode Island's, or Massachusetts' notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were

exercised to avoid and mitigate the effects of the delay, and that Defendant

complied with the requirements of Paragraphs 32 and 33, above.  If Defendant

carries this burden, the delay at issue shall be deemed not to be a violation by

Defendant of the affected obligation of this Consent Decree identified to U.S. EPA,

Utah, Rhode Island, Massachusetts, and the Court.

## X.  **DISPUTE RESOLUTION**

37.    Unless otherwise expressly provided for in this Consent Decree, the

dispute resolution procedures of this Section shall be the exclusive mechanism to

resolve disputes arising under or with respect to this Consent Decree.

38.    <u>Informal Dispute Resolution.</u>  Any dispute subject to dispute

resolution under this Consent Decree shall first be the subject of informal

negotiations.  The dispute shall be considered to have arisen when Defendant sends

the United States, Utah, Rhode Island, or Massachusetts a written Notice of

Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The

period of informal negotiations shall not exceed sixty (60) Days from the date the

dispute arises, unless that period is modified by written agreement.  The failure to

submit a Notice of Dispute within ten (10) Days from the date upon which the

issue in dispute first arises waives Defendant's right to invoke dispute resolution

under this Section.  If the Parties cannot resolve a dispute by informal negotiations,

then the position advanced by the United States, Utah (for the portion of the civil

penalty due to Utah in Paragraph 10.b), Rhode Island (for the portion of the civil

penalty due to Rhode Island in Paragraph 10.c), or Massachusetts (for the portion

of the civil penalty due to Massachusetts in Paragraph 10.d) shall be considered

binding unless, within sixty (60) Days after the conclusion of the informal

negotiation period, Defendant invokes formal dispute resolution procedures as set

forth below.

      39.   <u>Formal Dispute Resolution.</u>  Defendant shall invoke formal dispute

resolution procedures, within the time period provided in the preceding Paragraph,

by serving on the United States, Utah (for the portion of the civil penalty due to

Utah in Paragraph 10.b), Rhode Island (for the portion of the civil penalty due to

Rhode Island in Paragraph 10.c), or Massachusetts (for the portion of the civil

penalty due to Massachusetts in Paragraph 10.d) a written Statement of Position

regarding the matter in dispute.  The Statement of Position shall include, but need

not be limited to, any factual data, analysis, or opinion supporting Defendant's

position and any supporting documentation relied upon by Defendant.

      40.   The United States, Utah (for the portion of the civil penalty due to

Utah in Paragraph 10.b), Rhode Island (for the portion of the civil penalty due to

Rhode Island in Paragraph 10.c), or Massachusetts (for the portion of the civil

penalty due to Massachusetts in Paragraph 10.d) shall serve its Statement of

Position within sixty (60) Days of receipt of Defendant's Statement of Position.

The United States', Utah's, Rhode Island's, or Massachusetts' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, Utah, Rhode Island, or Massachusetts.  The United States', Utah's, Rhode Island's, or Massachusetts' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

41.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, Utah (for the portion of the civil penalty due to Utah in Paragraph 10.b), Rhode Island (for the portion of the civil penalty due to Rhode Island in Paragraph 10.c), or Massachusetts (for the portion of the civil penalty due to Massachusetts in Paragraph 10.d) in accordance with Section XIV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States', Utah's, Rhode Island's, or Massachusetts' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

42.     The United States, Utah (for the portion of the civil penalty due to Utah in Paragraph 10.b), Rhode Island (for the portion of the civil penalty due to Rhode Island in Paragraph 10.c), or Massachusetts (for the portion of the civil penalty due to Massachusetts in Paragraph 10.d) shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum and/or request a hearing on the merits, to the extent permitted by the Local Rules.

43.     <u>Standard of Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 41, judicial review of any dispute shall be governed by applicable principles of law.

44.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 26.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## XI.  **INFORMATION COLLECTION AND RETENTION**

45.     The United States (and Utah, Rhode Island, and Massachusetts for facilities within the States of Utah, Rhode Island, and Massachusetts, respectively) and its representatives, including its attorneys, contractors, and consultants, shall have the right of entry into any of Defendant's facilities (to the extent that Defendant has the right to authorize a right of entry) covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     Monitor the progress of activities required under this Consent Decree;

b.     Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     Obtain samples and, upon request, splits of any samples within the possession of Defendant and collected by Defendant or its representatives, contracted Firms, contracted Renovators, or consultants;

d.     Obtain documentary evidence, including photographs, contracts, work orders, change orders, and similar data within the possession of Defendant (and upon request instruct its representatives or Installers to provide the United States with any data related to RRP work performed under a contract with Defendant, such as documents, sampling results, photographs, and similar data); and

e.     Assess Defendant's compliance with this Consent Decree.

46.     Upon request, U.S. EPA shall provide to Defendant an opportunity to split any samples taken by U.S. EPA.

47.     Defendant shall retain (and shall instruct its Installers to preserve) all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its Installers' or agents' possession or control, or that come into its or its Installers' or agents' possession or control, and that relate to Defendant's performance of its obligations under this Consent Decree until termination of this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, U.S. EPA may submit a written request to review the information.

48.     Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  Defendant may make no claim of

privilege regarding any periodic report and/or completed Checklist that Defendant is required to create or generate pursuant to this Consent Decree.

49.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant and the United States shall follow the procedures set forth in 40 C.F.R. Part 2.

50.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits not addressed by this Consent Decree, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits not addressed by this Consent Decree.

## XII.  <u>EFFECT OF SETTLEMENT</u>

51.    This Consent Decree resolves the civil claims of the United States, Utah, Rhode Island, and Massachusetts for the violations alleged in the Complaint filed in this action through the date of lodging of the Consent Decree.

52.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  Utah reserves all legal and equitable remedies available to enforce Paragraph 10.b and related stipulated

penalties for failure to comply with Paragraph 10.b (as described in Paragraph 22).

Rhode Island reserves all legal and equitable remedies available to enforce

Paragraph 10.c and related stipulated penalties for failure to comply with

Paragraph 10.c (as described in Paragraph 22). Massachusetts reserves all legal and

equitable remedies available to enforce Paragraph 10.d and related stipulated

penalties for failure to comply with Paragraph 10.d (as described in Paragraph 22).

This Consent Decree shall not be construed to limit the rights of the United States,

Utah, Rhode Island, or Massachusetts to obtain penalties or injunctive relief under

TSCA or its implementing regulations, under other federal laws, regulations, or

permit conditions, or under other state laws, regulations or permit conditions,

except as expressly specified in Paragraph 51.  The United States further reserves

all legal and equitable remedies to address any imminent and substantial

endangerment to the public health or welfare or the environment whether related to

the violations addressed in this Consent Decree or otherwise.

53.    In any subsequent administrative or judicial proceeding initiated by

the United States, Utah, Rhode Island, or Massachusetts for injunctive relief, civil

penalties, other appropriate relief relating to Defendant's violations, Defendant

shall not assert, and may not maintain, any defense or claim based upon the

principles of waiver, res judicata, collateral estoppel, issue preclusion, claim

preclusion, claim-splitting, or other defenses based upon any contention that the

claims raised by the United States, Utah, Rhode Island, or Massachusetts in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 51.

54.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits, and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States, Utah, Rhode Island, and Massachusetts do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of TSCA, with TSCA's implementing regulations, or with any state law or regulation.

55.     This Consent Decree does not limit or affect the rights of Defendant or of the United States, Utah, Rhode Island, and Massachusetts against any third parties not party to this Consent Decree, including any entities that perform Renovations under contract with Defendant.

56.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

57.     The Parties shall bear their own costs of this action, including

attorneys' fees, except that the United States, Utah (for the portion of the civil

penalty due to Utah in Paragraph 10.b), Rhode Island (for the portion of the civil

penalty due to Rhode Island in Paragraph 10.c), and Massachusetts (for the portion

of the civil penalty due to Massachusetts in Paragraph 10.d) shall be entitled to

collect the costs (including attorneys' fees) incurred in any action necessary to

collect any portion of the penalty or any stipulated penalties due, but not paid, by

Defendant.  Utah reserves the right to reimburse itself for attorney's fees incurred

in pursing this action from the penalty amount due to Utah under Section 19-2-

115(9)(b) of the Utah Code and as set forth in Paragraph 10.b.

## XIV.  NOTICES

58.     Unless otherwise specified herein, whenever notifications,

submissions, or communications are required by this Consent Decree, they shall be

made in writing and addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Re: DOJ No. 90-5-1-1-11854

<u>To U.S. EPA:</u>

<u>OECA:</u>

Presler.amos@epa.gov

<u>Region 1:</u>

magoon.molly@epa.gov
woodward.kathleen@epa.gov

<u>Region 5:</u>

r5lecab@epa.gov
calvo.estrella@epa.gov
mcauliffe.mary@epa.gov

<u>Region 9:</u>

weintraub.max@epa.gov

<u>To Utah:</u>

Bryce C. Bird
Director
Utah Division of Air Quality
P.O. Box 144870
Salt Lake City, UT 84114-4870
bbird@utah.gov

With a copy to:

Marina V. Thomas
Assistant Attorney General
Utah Attorney General's Office
P.O. Box 140873
Salt Lake City, UT 84114-0873
marinathomas@agutah.gov

To Rhode Island:

Mike Simoli
Chief, Center for Healthy Homes and Environment
RIDOH Room 206
3 Capitol Hill
Providence RI  02908
mike.simoli@health.ri.gov

With a copy to:

Alison B. Hoffman
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
ahoffman@riag.ri.gov

To Massachusetts:

Michael Doheny
Undersecretary of Labor/General Counsel
Executive Office of Labor and Workforce Development
Commonwealth of Massachusetts
One Ashburton Place, Boston, MA 02114
Tel: (617) 626-7107
michael.doheny@mass.gov

With a copy to:

Alix P. Boren
Counsel, Executive Office of Labor and Workforce Development
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02114
alix.p.boren@mass.gov


To Defendant:

General Counsel
The Home Depot
2455 Paces Ferry Road NW, Bldg. C-20
Atlanta, GA  30339-4024

and

Adam Sowatzka
Partner
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
asowatzka@kslaw.com

59.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

60.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

61.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.  RETENTION OF JURISDICTION

62.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.  MODIFICATION

63.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by the United States (after consultation with Utah, Rhode Island, and Massachusetts) and Defendant.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

64.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section X (Dispute Resolution) of this Consent Decree, provided, however, that, instead of the burden of proof provided by Paragraph 36, the Party (whether the United States or Defendant) seeking the modification bears

the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

65.    Three years after the Effective Date, and provided that Defendant has implemented the requirements of Section VI (Compliance Requirements) of this Consent Decree, and has paid the penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

66.    Following receipt by the United States of Defendant's Request for Termination, the United States (after consultation with Utah, Rhode Island, and Massachusetts) and the Defendant shall confer informally concerning the Request for Termination and any disagreement that the United States and Defendant may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the United States and Defendant shall submit, for the Court's approval, a joint stipulation terminating the Decree.

67.    If the United States does not agree that the Decree may be terminated, or if the United States does not respond to Defendant's Request for Termination

within ninety (90) Days of receipt of such Request, Defendant may invoke dispute resolution under Section X (Dispute Resolution) of this Consent Decree.

## XIX.  26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION

68.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Paragraph 6 of Section III (Applicability); Paragraphs 13 to 19 of Section VI (Compliance Requirements); Paragraphs 45 to 50 of Section XI (Information Collection and Retention); and Exhibits A, B, C, D, E, and F, is restitution or required to come into compliance with law.

## XX.  PUBLIC PARTICIPATION

69.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXI.  **SIGNATORIES**

70.     Each undersigned representative of Defendant, the United States, Utah, Rhode Island, and Massachusetts certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

71.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII.  **INTEGRATION**

72.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXIII.  **FINAL JUDGMENT**

73.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, Utah, Rhode Island, Massachusetts, and Defendant.

## XXIV.  **APPENDICES**

74.    The following appendices are attached to and part of this Consent Decree:

a.    Exhibit A – Lead Paint Renovation Acknowledgement Form Checklist (HS-115);

b.    Exhibit B – Lead Test Results Form (HS-119);

c.    Exhibit C – Procedures for Missing Pamphlet Receipt;

d.    Exhibit D – Procedures for Missing Checklist;

e.    Exhibit E – Procedures for Addressing Complaints and Other Non-Compliance; and

f.    Exhibit F – Defendant's Additional RRP Forms: Receipt of the Lead Paint Pamphlet (HS-105); Multi-Family Renovation Notice (HS-116); Record of Tenant Notification (HS-117); LSWP Exception Form (HS-118); Receipt of Lead Paint Pamphlet (COF Owner/Operator) (HS-130); Notice to Parents or Guardians (HS-131); Record of Parent Notification (HS-132); Receipt of Lead Paint

Pamphlet (Multi-Unit Housing Owner/Operator) (HS-133); and Fencing Form

(HS-134).

SO ORDERED THIS 22nd DAY OF __April__, 2021.

_____

MARK H. COHEN
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.

FOR PLAINTIFF, UNITED STATES OF AMERICA:

JONATHAN D. BRIGHTBILL
Principal Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


Date 12/17/20

JAMES D. FREEMAN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street
South Terrace, Suite 370
Denver, CO 80202

BYUNG J. PAK
United States Attorney


*/s/Lori M. Beranek*                       Date December 17, 2020

LORI M. BERANEK
Assistant U.S. Attorney
600 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
Georgia Bar No. 053775
(404) 581-6050
Lori.beranek@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.

FOR THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

Date: _____

SUSAN BODINE

Digitally signed by SUSAN BODINE
Date: 2020.12.14 18:28:14 -05'00'

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Rosemarie Kelley

Digitally signed by Rosemarie Kelley
Date: 2020.12.11 17:38:24 -05'00'

ROSEMARIE KELLEY
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

JAMES MILES

Digitally signed by JAMES MILES
Date: 2020.12.10 17:12:07 -05'00'

JAMES MILES
Acting Associate Division Director
Waste and Chemical Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

AMOS PRESLER

Digitally signed by AMOS PRESLER
Date: 2020.12.10 16:08:44 -05'00'

AMOS PRESLER
Attorney
Waste and Chemical Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.


T. Leverett Nelson
Digitally signed by T. Leverett Nelson
Date: 2020.12.11 12:51:27 -06'00'

_____     Date_____
T. LEVERETT NELSON
Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604


MICHAEL HARRIS
Digitally signed by MICHAEL HARRIS
Date: 2020.12.11 10:50:22 -06'00'

_____     Date_____
MICHAEL D. HARRIS
Director
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604


MARY MCAULIFFE
Digitally signed by MARY MCAULIFFE
Date: 2020.12.10 12:47:29 -06'00'

_____     Date_____
MARY T. McAULIFFE
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604


Asque, Gillian
Digitally signed by Asque, Gillian
Date: 2020.12.10 12:42:52 -06'00'

_____     Date_____
GILLIAN ASQUE
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.


_____     Date ___12/11/20___
TIM CONWAY
Acting Deputy Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square – Suite 100
Boston, MA 02109-3812


_____     Date ___12/11/20___
KATHLEEN E. WOODWARD
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square – Suite 100
Boston, MA  02109-3912

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.


DEBRA THOMAS
Digitally signed by DEBRA THOMAS
Date: 2020.12.09 12:36:18 -07'00'

_____   Date_____

DEBRA H. THOMAS
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, CO 80202


Schefski, Kenneth
Digitally signed by Schefski, Kenneth
Date: 2020.12.08 17:11:15 -07'00'

_____   Date_____

KENNETH C. SCHEFSKI
Regional Counsel
U. S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, CO 80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.

FOR PLAINTIFF, THE STATE OF UTAH:

*/s/Marina V. Thomas*
_____

MARINA V. THOMAS
Assistant Attorney General
Environment Division
Utah Attorney General's Office
195 North 1950 West
P.O. Box 140873
Salt Lake City, UT 84114-0873

Date_____December 17, 2020_____

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.


FOR PLAINTIFF, THE STATE OF RHODE ISLAND:

PETER F. NERONHA
Attorney General




*/s/Alison B. Hoffman*                           Date December 17, 2020

ALISON B. HOFFMAN
Special Assistant Attorney General
Environmental Unit, Civil Division
Office of the Attorney General
150 South Main Street
Providence, RI 02903

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.

FOR PLAINTIFF, THE COMMONWEALTH OF MASSACHUSETTS EXECUTIVE OFFICE OF WORKFORCE DEVELOPMENT, DEPARTMENT OF LABOR STANDARDS:

_____        Date_____
                                              April 15, 2021

MICHAEL DOHENY
Special Assistant Attorney General
Undersecretary of Labor/General Counsel
Executive Office of Labor and Workforce Development
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02114

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America, et al. v. Home Depot U.S.A., Inc.,* subject to public notice and comment.


FOR DEFENDANT, HOME DEPOT U.S.A., INC.:


_____     Date _Dec. 10, 2020_____
JOCELYN HUNTER
Vice President - Legal, Deputy General
Counsel, and Assistant Secretary
Home Depot U.S.A., Inc.
2455 Paces Ferry Road NW, Bldg. C-20
Atlanta, GA  30339-4024

# Exhibit A – Lead Paint Renovation Acknowledgement Form Checklist (HS-115)

**HS-115: LEAD PAINT RENOVATION ACKNOWLEDGEMENT**
One completed copy to customer, one to owner (if different), one to Home Depot for payment.

| | |
|---|---|
| Certified Renovator Company Name | Date |

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State   Zip |

**Briefly describe the type of job:**
(e.g., front door, kitchen cabinets, etc.)

**Training:**

**If applicable, certified renovator provided training to non-certified workers on (check all that apply):**

- ☐ Posting warning signs
- ☐ Remove / cover furniture
- ☐ PPE
- ☐ Waste handling
- ☐ Setting up plastic containment (interior/exterior)
- ☐ Avoiding spread of dust to adjacent areas
- ☐ Post-renovation cleaning (interior/exterior)
- ☐ Cleaning verification procedures
- ☐ Close windows/doors/ducts
- ☐ Maintaining containment
- ☐ Visual Inspection
- ☐ Prohibited Practices

Names of workers trained:
_____
(Attach another page with additional names if necessary)

**Notice:**

- ☐ Copy of firm and personal RRP certs available on-site
- ☐ Warning signs posted at entrance to work area

**Containment:**

**The work area was contained to prevent the spread of dust and debris (check all that apply):**

**For interior work:**
- ☐ All objects in the work area were removed or covered
- ☐ HVAC ducts in work area were closed and covered
- ☐ Windows and doors in work area closed and sealed
- ☐ Floor surfaces covered by plastic 6 ft from work area
- ☐ Doors in the work area were closed and sealed
- ☐ Doors that must be used in the work area were covered to allow passage but prevent spread of dust
- ☐ Floors in work area covered with taped-down plastic

**For exterior work:**
- ☐ Windows in and within 20 ft of work area were closed
- ☐ Doors in and w/in 20 ft of work area closed and sealed
- ☐ Ground was covered by plastic extending 10 ft from the work area – plastic anchored to building and weighed down by heavy objects
- ☐ If necessary, vertical containment was installed if property line prevents 10 ft of plastic ground cover, or if needed to prevent migration of dust and debris to adjacent property

**Cleaning:**

- ☐ Waste was contained on-site and while being transported off-site

**For interior work:**
- ☐ Plastic sheeting misted, folded dirty side inward, and taped for removal
- ☐ Work area surfaces, walls, and objects cleaned using HEPA vacuum and/or wet-cloths or mops
- ☐ Certified renovator performed cleaning verification. Describe results, incl. no. of wet/dry cloths used:
_____

**For exterior work:**
- ☐ All chips and debris were picked up
- ☐ Protective sheeting was misted, folded dirty side inward, and taped for removal
- ☐ Certified renovator performed a visual inspection, and no dust, debris or residue remain

**I certify under penalty of law that the above information is true and complete, and certify that I have complied with all requirements of the Lead Renovation, Repair, and Painting (RRP) Rule, 40 C.F.R. § 745.80, et seq., or the equivalent state law.**

| | | | |
|---|---|---|---|
| Printed Name | Signature | Firm Cert. No. | Firm Cert. Expires |
| | | Individual Cert. No. | Indiv. Cert. Expires |

**CUSTOMER NOTICE:** If you have any questions or concerns about the lead-safe work practices performed in your home, please contact us at lead_paint@homedepot.com

# Exhibit B – Lead Test Results Form (HS-119)

**HS-119: LEAD TEST RESULTS**

This form should not be used by HDE or in states where THD has an assume-lead policy (i.e., MA, RI, KS, CA)

| Customer Last Name | Customer First Name | Address | Store/Branch No. | Lead/ PO No. |
|---|---|---|---|---|
| | | | | |

- Before doing any work in a home built in or before 1978, an RRP-certified service provider must test the work area(s) for lead paint.
- If you believe that your work in a pre-1978 home is not subject to the RRP rules, please complete form HS-118 to document the exception(s).

| LEAD PAINT TESTING | | | | LEAD PAINT TESTING | | | |
|---|---|---|---|---|---|---|---|
| Test Kit Mfr. | Test Kit Lot | Test Date | Test Site | Test Kit Mfr. | Test Kit Lot | Test Date | Test Site |
| Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | | Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | |
| Test Kit Mfr. | Test Kit Lot | Test Date | Test Site | Test Kit Mfr. | Test Kit Lot | Test Date | Test Site |
| Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | | Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | |
| Test Kit Mfr. | Test Kit Lot | Test Date | Test Site | Test Kit Mfr. | Test Kit Lot | Test Date | Test Site |
| Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | | Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | |
| Test Kit Mfr. | Test Kit Lot | Test Date | Test Site | Test Kit Mfr. | Test Kit Lot | Test Date | Test Site |
| Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | | Test Results: Is Lead Present?   Yes ☐   No ☐   Purchase/Assume Lead Paint ☐ | | | |

Please use additional sheets if more than 8 sites are tested.

**I certify under penalty of law that the above information is true and complete, and certify that I have complied with all requirements of the Lead Renovation, Repair, and Painting (RRP) Rule, 40 C.F.R. § 745.80, et seq., or the equivalent state law.**

| Printed Name | Signature | Firm Cert. No. | Firm Cert. Expires |
|---|---|---|---|
| | | | |
| | | Individual Cert. No. | Indiv. Cert. Expires |

If you have any questions about how to use this form,
please contact your SLM or send an email to ewr@homedepot.com

## Exhibit C – Procedures for Missing Pamphlet Receipt

1.     If, for any Lead Project, Defendant does not receive from the Installer a Pamphlet receipt signed by the occupant within thirty (30) Days after an Installer notifies Defendant that the Installer or a Subcontractor has completed a Lead Project, Defendant shall:

   a.     Send correspondence to the occupant providing a copy of the Pamphlet, and

   b.     Discipline the Installer according the Defendant's progressive disciplinary policy, which shall include a fine.  Repeat offenses may trigger additional discipline up to and including suspension or termination of the Installer.

**Exhibit D – Procedures for Missing Checklist**

1.  If, for any Lead Project, Defendant does not receive a copy of the Checklist from an Installer or Subcontractor within thirty (30) Days after an Installer notifies Defendant that the Installer or Subcontractor has completed a Lead Project:

    a.  Defendant shall take each of the following steps:

        i.  Defendant shall fine the Installer in accordance with its progressive discipline policy; and

        ii.  Defendant shall send written notice to the Installer advising that if the Checklist is not submitted within the next thirty (30) Days (i.e., within sixty (60) Days after the Project was completed), Defendant will trigger the process described below in Subpart b.

    b.  If a completed Checklist is not received within the time set forth in Subpart a, or if Defendant does not resolve an inquiry pursuant to Paragraphs 1.a.ii and 1.a.iii of Exhibit E, then Defendant shall send correspondence to the occupant offering to perform an inspection at no cost to the occupant within thirty (30) Days of the date of the issuance of the correspondence.

        i.  If the occupant does not respond within the thirty (30) Day period, or cancels a scheduled inspection, the Defendant shall not be required to take any further action.

        ii.  If the occupant responds within the thirty (30) Day period in Paragraph 1.b above and schedules an inspection, the Defendant will conduct an inspection of the residence by a third party, along with a licensed lead inspector risk assessor ("LI/RA") where required.

            1.  For a Project that involves just the interior of a residence, Defendant will:

                a.  Conduct an inspection of those areas in the interior of the home where the Defendant's Renovation activity occurred, and conduct a cleaning of the same as set forth in <u>40 C.F.R. § 745.85(a)(5)</u>

("Cleaning the work area").  The scope of the inspection and cleaning will be at the discretion of the cleaning contractor utilized by the Defendant to conduct the inspections and cleaning.  In addition, as part of that cleaning, the Defendant shall conduct post-cleaning verification as specified by 40 C.F.R. § 745.85(b) ("Standards for post-renovation cleaning verification").

b.   Alternatively, Defendant may instead conduct a surface dust wipe sampling of an appropriate number of sampling locations, including at least one floor, one window sill, and one window trough in each room where a Renovation occurred, per 40 C.F.R. § 745.227(a)(3).

   i.   If the sampling results are below U.S. EPA standards, the Defendant shall not be required to take any further action, other than issuing a close-out letter to the occupant, providing a copy of the sampling results.

   ii.   If the sampling results are above U.S. EPA standards, the Defendant will offer in writing to conduct a cleaning of the interior of the residence following the work practices set forth at 40 C.F.R. § 745.85(a)(5) and resample.

   iii.   If the occupant fails to respond to the offer referenced in the proceeding sentence (Paragraph 1.b.ii) within thirty (30) Days of the issuance of the letter, the Defendant shall not be required to take any further action.

   iv.   If the occupant contacts the Defendant within the 30-Day period (Paragraph 1.b.ii) and schedules a cleaning and resampling, and the resampling results are below the U.S. EPA's standards, the Defendant shall

not be required to take any further action, other than providing a close-out letter to the occupant with a copy of the resampling results.

    v.    If the resampling results are still above the relevant U.S. EPA standards, the Defendant will partner with the local health department to determine if additional steps are needed to be taken related to the Defendant's Lead Project, or if there are additional sources of lead in the home not related to Defendant's work.

2.    For a Lead Project involving just the exterior of the property, Defendant will conduct a visual inspection of the exterior of the property for the presence of paint chips consistent with 40 C.F.R. § 745.85(a)(5)(i).

    a.    If there are no paint chips present, the Defendant shall not be required to take any further action, other than providing a close-out letter to the occupant.

    b.    If there are visible paint chips present, the Defendant will conduct a cleaning (physical removal) of any visible paint chips present, consistent with 40 C.F.R. § 745.85(a)(5)(i).  Upon completing the cleaning, the Defendant will document the cleaning activities and send a close-out letter to the occupant.

3.    For Renovations involving both the interior and exterior of the property (e.g., windows), the Defendant will complete the requirements of both Paragraphs 1.b.ii.1 and 1.b.ii.2 above.

**Exhibit E – Procedures for Addressing Complaints and Other Non-Compliance**

1. If Defendant receives a complaint related to a Lead Project from the public, a Customer, or a Government Agency regarding Defendant's compliance with the RRP Rules related to a Lead Project, or Defendant otherwise determines that there may be a potential RRP non-compliance (hereinafter "RRP Complaint"), the Defendant shall do the following:

   a. Conduct an inquiry of the RRP Complaint within thirty (30) Days of receipt of the RRP Complaint.  As part of the inquiry, the Defendant shall:

      i. If the RRP Complaint alleges that an occupant did not receive a copy of the Pamphlet, and Defendant has not received from the Installer a Pamphlet receipt signed by the occupant within thirty (30) Days after an Installer notifies Defendant that the Installer or a Subcontractor has completed a Lead Project, Defendant will follow the procedure set forth in Exhibit C.

      ii. If the RRP Complaint alleges that the occupant has not received a signed Checklist from the Installer or Subcontractor, the Defendant will search its records for a copy of the signed Checklist and if found will provide a copy to the occupant.  If a copy of the signed Checklist cannot be located, the Defendant will follow the process identified in Exhibit D.

      iii. If the RRP Complaint alleges that an Installer or Subcontractor did not follow RRP Rules when completing a Lead Project or that the Renovation was not performed by a Certified Firm or Certified Renovator, the Defendant will conduct an inquiry including reviewing the Checklist and contacting the Installer (who will follow up with its Subcontractor if applicable).  If this inquiry does not resolve the issue (e.g., if the occupant disputes the accuracy of the completed Checklist or a Checklist cannot be located), the Defendant will follow the process identified in Exhibit D.

      iv. All other inquiries will be handled on a case-by-case basis.

   b. Defendant shall develop a team of dedicated associates that are RRP-certified to handle RRP Complaints.

**Exhibit F – Defendant's Additional RRP Forms: Receipt of the Lead Paint Pamphlet (HS-105); Multi-Family Renovation Notice (HS-116); Record of Tenant Notification (HS-117); LSWP Exception Form (HS-118); Receipt of Lead Paint Pamphlet (COF Owner/Operator) (HS-130); Notice to Parents or Guardians (HS-131); Record of Parent Notification (HS-132); Receipt of Lead Paint Pamphlet (Multi-Unit Housing Owner/Operator) (HS-133); and Fencing Form (HS-134)**

**HS-105: RECEIPT OF LEAD PAINT PAMPHLET**

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | |
|---|---|---|
| Address | City | State    Zip |

## PLEASE COMPLETE ONE OF THE TWO AREAS BELOW:

---

**OWNER / OCCUPANT CONFIRMATION:**

I am the (check one):   ☐ Owner   ☐ Occupant   ☐ Both   of the property listed above.

I have received a copy of the lead hazard information pamphlet informing me of the potential risk of the lead hazard exposure from renovation activity to be performed in my dwelling unit. I received this pamphlet before the work began.

| | | |
|---|---|---|
| Printed Customer Name | Customer Signature | Date |

---

**IF A RENTAL, AND TENANT IS UNAVAILABLE, SERVICE PROVIDER MUST CHECK ONE OF THE BOXES BELOW AND SIGN WHERE INDICATED:**

☐ **Declined** – I certify that I have made a good faith effort to deliver the lead hazard information pamphlet to the rental dwelling unit listed below at the date and time indicated and that the occupant declined to sign the confirmation of receipt. I further certify that I have left a copy of the pamphlet at the unit with the occupant.

☐ **Unavailable for signature** – I certify that I have made a good faith effort to deliver the lead hazard information pamphlet to the rental dwelling unit listed below and that the occupant was unavailable to sign the confirmation of receipt. I further certify that I have left a copy of the pamphlet at the unit by sliding it under the door or by _____.

(fill in how pamphlet was left)

| | | |
|---|---|---|
| Service Provider's Printed Name | Signature | Date |

---

**CUSTOMER NOTICE:** If you have any questions or concerns about the lead-safe work practices performed in your home, please contact us at lead_paint@homedepot.com

**HS-116: MULTI-FAMILY RENOVATION NOTICE**

| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| Address | | City | State | Zip |

**This Notice must be posted or provided to each tenant when renovations are performed in common areas of multi-family housing built prior to 1978.**

We will perform the following renovation activities (e.g., sanding, window replacement):

In the following location(s) (e.g., lobby, recreation center):

We expect to start work by _____, and finish by _____.
   (Date)                                                                      (Date)

Because this property was built before 1978, some of the paint disturbed during the renovation may contain lead. You may obtain a copy of an EPA pamphlet about the dangers of lead paint and a signed checklist showing the lead-paint precautions that were taken during the work by telephoning me at the number below. Please leave a message and be sure to include your name, phone number, and address. I will either mail you the materials or slide them under your door, at no cost to you. Additional information about lead paint is available online at www.epa.gov/lead.

| Service Provider Signature | Service Provider Name | Company Name |

| Service Provider Address | | Telephone |

CUSTOMER NOTICE: If you have any questions or concerns about the lead-safe work practices performed for this project, please contact us at lead_paint@homedepot.com.

## HS-117: RECORD OF TENANT NOTIFICATION

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State    Zip |

**This form documents that you have provided a Renovation Notice (HS-116) to all
tenants before beginning work in the common areas of a multi-family building.**

I, the undersigned Installer, certify under penalty of law that I have provided advance notice of renovation
activity to all tenants of the property listed above in accordance with 40 C.F.R. § 745.84(b)(2) by doing
one of the following:

☐ Delivered the HS-116 to every affected unit; **OR**

☐ Delivered the HS-116 to the mailbox of every affected unit; **OR**

☐ Posted copies of the HS-116 where they are likely to be seen
by the occupants of all affected units.

| | | |
|---|---|---|
| Service Provider's Printed Name | Signature | Date |

If you have any questions about how to use this form,
please contact your SLM or send an email to ewt@homedepot.com

## HS-118: LSWP EXCEPTION FORM

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | City | State | Zip |

**If you believe that your work in a pre-1978 home is exempt from the EPA's Lead Renovation, Repair, and Painting (RRP) Rule and does <u>NOT</u> require testing, please select one of the options below to indicate why.**

☐ **1. The home was built in 1978 or after**
   (a)  If the customer believes the age of the home is **incorrect**, then:
   - You can **test** the work area(s) and record the results on form HS-119; **OR**
   - You can attach **records** that show the correct year-built.
   (b)  If the age of the home is **unknown** (i.e., if our system reported the year-built as "**0000**"), then:
   - You can **test** the work area(s) and record the results on form HS-119; **OR**
   - The **customer** can provide the year-built in the box to the right and then **sign** below:   [ YEAR ]

I confirm that the year written above is correct. I understand that Home Depot is relying on the information that I have provided to determine that no lead-paint hazard exists, and I release Home Depot and its service providers from any liability relating to lead paint.

_____   _____
Customer Signature                 Date

☐ **2. The work will disturb less than 20 sq.ft. of paint outdoors, or less than 6 sq.ft. indoors**
   Please explain what work will be done and how you measured the amount of paint to be disturbed:
   (Example: "New countertop install only – no demo" or "Storm protection only – 6 windows")

   | |
   |---|
   | |

   **NOTE:**  A full-frame window replacement, or **any** demolition (i.e. breaking) of lead-painted components **always** requires LSWP.

☐ **3. Housing is for elderly (62+) or disabled persons, and no children under 6 will reside there**
   Please ask the customer to sign below to confirm that this is correct:

_____   _____
Customer Signature                 Date

☐ **4. This is a zero-bedroom dwelling (studio apartment, dorm rooms, etc.)**

☐ **5. The customer has provided a report from a certified inspector confirming there is no lead paint in any work area.**
   NOTE: You <u>must</u> attach a copy of the inspector's report.

I, the undersigned, am familiar with the requirements of the EPA's Lead Renovation, Repair, and Painting (RRP) Rule, 40 C.F.R. § 745.80, et seq., or my state's EPA-authorized equivalent and hereby certify under penalty of law that the above information is to the best of my knowledge true, accurate, and complete.

| | | | |
|---|---|---|---|
| Printed Name | Signature | Firm Cert. No. | Individual Cert. No. |

If you have any questions about how to use this form,
please contact your SLM or send an email to ewr@homedepot.com.



## HS-130: RECEIPT OF LEAD PAINT PAMPHLET
### Child-Occupied Facility – Owner/Operator

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State | Zip |

Before performing work in a **child-occupied facility** (e.g., a daycare or school serving children younger than six) built before 1978, we're required to provide a copy of an EPA pamphlet on the dangers of lead paint to (1) the building's owner, (2) the operator of the facility, if that's someone different from the owner, **and** (3) parents or guardians of children who use the facility.

This form confirms that we've given the pamphlet to (1) the property owner and (2) the facility's operator. To notify parents, you must use forms HS-131 and HS-132.

**OWNER / OPERATOR CONFIRMATION:**

I am the (check one):

☐ Owner of the property listed above (or the owner's representative); **OR**
☐ Representative of the child-occupied facility at the property listed above; **OR**
☐ Both

I have received a copy of the lead hazard information pamphlet informing me of the potential risk of lead hazard exposure from renovation activity to be performed at the property. I received this pamphlet before the work began.

| | | |
|---|---|---|
| Printed Customer Name | Customer Signature | Date |

**IF OPERATOR IS UNAVAILABLE:**

If an adult representative of the child-occupied facility is not available to sign this receipt, then the service provider must check one of the boxes below and sign where indicated:

☐ **Declined –** I certify that I have made a good faith effort to deliver the lead hazard information pamphlet to the child-occupied facility listed above and an adult representative was present but declined to sign this receipt. I further certify that I have left a copy of the pamphlet at the facility with adult representative.

☐ **Unavailable for signature –** I certify that I have made a good faith effort to deliver the lead hazard information pamphlet to the child-occupied facility listed above and that an adult representative of the facility was unavailable to sign this receipt. I further certify that I have left a copy of the pamphlet at the facility by sliding it under the door or by _____.
(fill in how pamphlet was left)

| | | |
|---|---|---|
| Service Provider's Printed Name | Signature | Date |

**CUSTOMER NOTICE:** If you have any questions or concerns about the lead-safe work practices performed for your project, please contact us at lead_paint@homedepot.com.

**HS-131: NOTICE TO PARENTS OR GUARDIANS**

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State | Zip |

**This Notice must be posted or provided to each child's parent or guardian when renovations are performed in a child-occupied facility (e.g. daycare or school serving children younger than six) built before 1978.**

We will perform the following renovation activities (e.g., sanding, window replacement):

In the following location(s) (e.g., lobby, library, gym):

We expect to start work by _____, and finish by _____.
            (Date)                              (Date)

Because this property was built before 1978, some of the paint disturbed during the renovation may contain lead. You may obtain a copy of an EPA pamphlet about the dangers of lead paint and a signed checklist showing the lead-paint precautions that were taken during the work by telephoning me at the number below. Please leave a message and be sure to include your name, phone number, and address, and I will mail you the materials at no cost to you. Additional information about lead paint is available online at www.epa.gov/lead.

| | | |
|---|---|---|
| Service Provider Signature | Service Provider Name | Company Name |

| | |
|---|---|
| Service Provider Address | Telephone |

**CUSTOMER NOTICE:** If you have any questions or concerns about the lead-safe work practices performed for this project, please contact us at lead_paint@homedepot.com.

**HS-132: RECORD OF PARENT/GUARDUAN NOTIFICATION**

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State | Zip |

**This form documents that you have provided a Renovation Notice (HS-131) to every child's parent or guardian before beginning work in a child-occupied facility (e.g., daycare or school with children younger than six) that was built before 1978.**

I, the undersigned Installer, certify under penalty of law that I have provided advance notice of renovation activity at a child-occupied facility in accordance with 40 C.F.R. § 745.84(c)(2) or the applicable state equivalent by doing the following (check one):

☐ Delivered the HS-131 to the parent or guardian of every child; **OR**

☐ Posted copies of the HS-131 where they can be seen by the parents or guardians of every child.

| | | |
|---|---|---|
| Service Provider's Printed Name | Signature | Date |

If you have any questions about how to use this form,
please contact your SLM or send an email to ewr@homedepot.com



## HS-133: RECEIPT OF LEAD PAINT PAMPHLET
### Multi-Unit Housing – Owner/Operator

| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |
|---|---|---|---|

| Address | City | State | Zip |
|---|---|---|---|

Before performing work in the **common areas** of **multi-unit housing** (e.g., apartment buildings, etc.) built before 1978, we're required to (1) give the property owner an EPA pamphlet on the dangers of lead paint **and** (2) notify tenants.

This form confirms that we've given the pamphlet to the property owner. You must use forms HS-116 and HS-117 to document the tenant notification requirements.

**OWNER CONFIRMATION:**

I am the (check one):    ☐ Owner   OR   ☐ Owner's Representative    of the property listed above.

I have received a copy of the lead hazard information pamphlet informing me of the potential risk of lead hazard exposure from renovation activity to be performed in common area(s) of the property. I received this pamphlet before the work began.

| Printed Customer Name | Customer Signature | Date |
|---|---|---|

**CUSTOMER NOTICE:**  If you have any questions or concerns about the lead-safe work practices performed for your project, please contact us at lead_paint@homedepot.com.

**HS-134: FENCING FORM**

| | | | |
|---|---|---|---|
| Customer Last Name | Customer First Name | Store/Branch No. | Lead/PO No. |

| | | | |
|---|---|---|---|
| Address | | City | State  Zip |

**Removing a fence coated in lead paint may require lead-safe work practices** per the EPA's Renovation, Repair, and Paining (RRP) rules.

**Homes** built before 1978 may contain lead paint. But **fences** may not be the same age as the home, and their age cannot be verified by public records.

**Therefore** – If you are removing a painted fence at a home that was built **before 1978**, or if the age of the home is **unknown** (i.e., if our system reported the year-built as **"0000"**), then you must either:

(i)   **Test** the paint and record the results on form HS-119; **or**
(ii)  **Assume** the fence has lead paint and proceed accordingly; **or**
(iii) **Ask** the customer to provide the fence's year-built in the space below and sign the acknowledgment:

I confirm that the information stated above is correct. I understand that Home Depot is relying on the information that I have provided to determine whether a lead-paint hazard exists, and I release Home Depot and its service providers from any liability stemming from their reliance on my representation.

_____        _____
Customer Signature                                                    Date

**If the customer represents that the fence was built before 1978,
or if the customer does not know when the fence was built,
then you must follow steps (i) or (ii) above.**

If you have any questions about how to use this form,
please contact your SLM or send an email to ewr@homedepot.com